UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| VIRTUAL STUDIOS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:12-cv-54 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| HAGAMAN INDUSTRIES, INC., ) | |
| ) | |
| Defendant. ) | |

# **M E M O R A N D U M**

Before the Court is Defendant Hagaman Industries Inc.'s ("Defendant" or "Hagaman") motion for summary judgment (Court File No. 36) on Plaintiff Virtual Studios, Inc.'s ("Plaintiff" or "Virtual") claims Hagaman violated Plaintiff's copyright in a number of "room scene images" produced pursuant to a license agreement. Plaintiff responded in opposition (Court File No. 42) to which Hagaman replied (Court File No. 55). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Hagaman's motion for summary judgment (Court File No. 36).

**I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

   **A.  Factual Background**

Virtual is a graphic design company that creates virtual room scene images for carpet and flooring manufacturers to display product  (Court File No. 43 ("Sucher Aff."), ¶ 3). Virtual photographs actual rooms in a studio or other location and then digitally manipulates the photograph in order to display multiple flooring options (*id.* at ¶ 4).  Room scene manipulation involves the digital alteration of a photograph of a room so that a client's flooring product is virtually displayed in the room scene without requiring the carpet to be physically present in the room (*id.* at ¶ 4).  This provides Virtual's customers the opportunity to display many different carpet styles without

requiring they take numerous photos (*id.*). In late 2001 or early 2002, Virtual began performing this service for Hagaman, a small carpet manufacturer in north Georgia (*id.* at ¶ 5).

Virtual claims it offered Hagaman three different options to purchase room scene images (Court File No. 43-1, Virtual's Response to Interrogatories, 5). Option One provided that Hagaman could buy a room scene outright and obtain ownership of the copyright (*id.*). Option Two provided that Hagaman could purchase the exclusive rights to a room scene for one year (*id.*). During that time period, no other client can use the room scene. Virtual retains ownership of the scene and retains the right to manipulate it. Finally, Option Three provided Hagaman a free non-exclusive access to a room scene for one year. Virtual retained the exclusive right to manipulate the image. Virtual claims Hagaman chose the third option. Virtual finds support for its argument Hagaman agreed to a one-year license in the "Terms and Conditions" provision of its invoices, which Hagaman paid. Each time Virtual sent an invoice, these terms and conditions were listed on the back of the invoices. The first term and condition stated "Virtual Studios will provide its Client with the unlimited use of all photographs for a period of one year from the day of completion and payment of services as stated below" (Court File No. 36-3, Sucher Dep., Ex. 10 (p. 46)).[1] Virtual's President, Tom Sucher, however, testified that he had no specific recollection of what was discussed at his meetings with Daniel Hagaman, President of Hagaman Industries, Inc., or Michael Hagaman (*id.* at p. 49).

Hagaman, however, disputes this interpretation of the license between the parties. Daniel Hagaman testified he met with Sucher, to discuss the use of Virtual's images (Court File No. 36-1,

---

[1] In 2004 or 2005, Virtual added a provision to its terms and conditions, which indicated it reserved the right to "pursue unauthorized users of any Virtual Studios room scene image." The resulting list has also been provided to the Court (Court File No. 36-3, Sucher Dep., Ex. 10 (p. 47)).

2

Daniel Hagaman Dep.). He testified that, by his memory, "if they're going to do the work, we're going to own the images. And that's the way I always do that. I always have" (*id.* at p. 26). Daniel Hagaman testified that Sucher agreed to this condition and "[i]f he had not agreed, we wouldn't have gone any further" (*id.*). He could not, however, recall whether any specific correspondence about the terms had occurred or what the cost for each image would be (*id.* at p. 28). Daniel Hagaman also recalled a conversation with Sucher in which the distinction between a higher-price, exclusive-right agreement and a lower-price, nonexclusive-right agreement was discussed (*id.* at pp. 51, 73). Daniel Hagaman stated he chose the nonexclusive price because "it's less expensive and we didn't need exclusivity" (*id.* at p. 52). But he also indicated Sucher told him Hagaman would have the right to use the image forever (*id.* at p. 53), which he apparently based on the fact "[w]hen [he] said to [Sucher] we want to purchase this stuff and own it, he said okay. That's agreeable" (*id.* at p. 54). In discussing why this was so important to him, Daniel Hagaman stated

> in the past I had paid for work and then maybe want to reprint and redo things and the people that do the work say, oh, no. We own it. You've got to pay for it again. So once we got burned that way, every time I've done anything like this, that's what we do. We pay for the artwork. We pay to have this done. We want to own it. We want to be free to use it. Whatever the cost is for that, that's what we're buying. How much is it? If the price is right, we'll pay it. If it isn't, we don't. We do something else. That's the way we do business.

(*id.* at p. 69).

Daniel Hagaman indicated he and his son, Michael Hagaman, were responsible for approving payment of Virtual's invoices (*id.* at p. 29). "Depending upon the nature of the invoice," Hagaman's policy might or might not require explicit review and approval of Daniel or Michael before the invoice was paid (*id.*). When asked directly if he had read the terms and conditions portion of the invoices he stated "[p]robably" had but did not "[s]pecifically" contact anyone at Virtual about them

3

(*id.* at p. 68) and he did not know whether anyone at his company did (*id.* at p. 71).  When asked whether the provision that indicates Hagaman will have the right to unlimited use of the photograph for a period of one year conflicts with his understanding of the agreement, Daniel Hagaman stated "[n]o," "[d]o I believe we could use those images for a year?  Yes. . . . Do I believe we could continue to use them?  If we owned them, yes, we can.  That's what I believe" (*id.* at p.72).

Michael Hagaman, who described his position as an "inside salesman operations manager,"[2] testified consistently with Daniel Hagaman's position.  According to Michael Hagaman, Virtual's position that there was a time limitation on Hagaman's use of the room scene images is "pretty ridiculous because [Virtual] took the pictures knowing what the final intention for the picture was and had to [] properly deliver the picture.  And if they did [have such a limitation], then there should have been something in writing that they had us sign because they're the only person in the industry that has that practice" (Court File No. 36-2, Michael Hagaman Dep., p. 28).  He also testified to having a conversation with Sucher about pricing, in which two options were provided, "You could buy the room scene, which meant that nobody else could use it, so you would buy the exclusive, or for a lesser price you buy the room scene and they can sell it to somebody else again later" (*id.* at p. 35).  He indicated the "lower cost option is the one we chose, which is we can purchase it and other people can as well" (*id.*).  With respect to the invoices, Michael Hagaman indicated he was not in charge of the invoices and that the bookkeepers had to show all the invoices to Daniel Hagaman and that Daniel Hagaman had to approve all the invoices for payment (*id.* at pp. 32-33).

Hagaman also disputes the extent to which the invoices contained the terms and conditions language.  According to Hagaman, Virtual sent nine invoices all but one of which reference the

---

[2] Michael Hagaman also indicated he no longer works for Hagaman Industries.

4

terms and conditions on the reverse side. One of these invoices did not reference the terms and conditions (Court File No. 36-5), although it is unclear whether the reverse side contained them.[3] As noted, there are two possible versions of the terms and conditions that might have appeared on these invoices and Daniel Hagaman does not recall agreeing to or reading the terms and conditions. These nine invoices charged a cumulative total of approximately $30,135 for use and manipulation of 119 room scenes (Court File No. 36-6, Supplemental Spreadsheet).[4]

Hagaman used Virtual's room scenes on its website, in its catalog, and on its in-store displays (Court File No. 36-1, Daniel Hagaman Dep, pp. 7-8); (Court File No. 43, Sucher Aff., ¶ 5). Hagaman eventually phased out Virtual's photographs but continued to display them on its website (Court File No. 36-2, Michael Hagaman Dep., pp. 25, 47, 49). Hagaman paid its last Virtual invoice on December 19, 2004. Virtual claims it first discovered Hagaman's continued use of its images two years later, in 2006 (Court File No. 43-1, Virtual's Response to Interrogatories, 12, 13). After discovering this use, Sucher contacted Michael Hagaman via email on August 15, 2006:

> Michael,
> Good Afternoon. I hope all is going well with the band and business. I just wanted to get back to you on the room scenes because it was recently brought up to me. The room scenes that you guys are using in your brochures, rack cards and display are copyrighted property of Virtual Studios. Those room scenes can not be manipulated in anyway or it a [sic] direct violation of copyright law.
> As mentioned before if you want to use our room scenes for your new products then please let me know and we'll make the change.
> Regards
> Tom

---

[3] The Court notes Virtual apparently does not dispute this, although only the front of the pages was provided to the Court whereas Virtual contends its terms and conditions were on the back of the invoices.

[4] The cumulative total is not present on this spreadsheet or the exhibit cited by Hagaman. However, Virtual does not appear to dispute it.

5

(Court File No. 43-6). Sucher also claims he brought this to Daniel Hagaman's attention in 2006 (Court File No. 43, Sucher Aff., ¶ 7). Virtual obtained copyright certificates for its images on February 14, 2008. Virtual claims Hagaman continued to use Virtual's room scenes in retail stores through 2011 and on its website through 2012 (*id.* at ¶ 9), and attached a number of screenshots from Hagaman's website allegedly containing Virtual's images (Court File Nos. 43-2–43-5).

### B. Procedural Background

On February 21, 2013, Virtual brought suit against Hagaman in the Eastern District of Tennessee (Court File No. 1). Virtual's primary allegation is copyright infringement, brought under the Federal Copyright Act of 1976 as amended, 17 U.S.C. §§ 101 *et seq.* The remaining counts of the complaint–that is, breach of contract and unjust enrichment–are state law claims. Virtual seeks, *inter alia*, injunctive relief, monetary damages, and attorney's fees.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled

6

to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

Hagaman argues judgment should be entered in its favor on Virtual's Copyright Act claim, 17 U.S.C. § 101 *et seq.* First, Hagaman argues Virtual never agreed to a one-year license term. Second, Hagaman contends Virtual's claim is barred by the statute of limitations. Hagaman also argues statutory damages and attorney's fees are unavailable to Virtual. Moreover, Hagaman argues statutory damages should be reduced because Hagaman's alleged infringement was innocent and not willful. Finally, Hagaman argues Virtual's state claims are preempted by the Copyright Act, which Virtual has conceded.

### A. One-Year License

Hagaman argues judgment should be entered in its favor because it never agreed to a one-

7

year license term. Hagaman points to the testimony of Daniel and Michael Hagaman, discussed above, in which they testified they did not recall agreeing to a one-year license term and would not have done so. Hagaman also claims Sucher testified he does not recall the exact content of the meetings he had with the Hagamans. Hagaman also notes one of the invoices did not reference the terms and conditions and Hagaman did not "sign or otherwise affirmatively agree" to the terms and conditions.

A factual dispute arises, however, because Virtual claims it offered three options to Hagaman, only one of which provided outright ownership of the image. Moreover, information about the one-year time limit was included on the invoices and Hagaman acknowledges it made payments based on those invoices. Although one invoice did not–at least on the front–reference the terms and conditions, the others apparently did, or at least, there is a dispute as to whether they did. Nor is Sucher's testimony, on which Hagaman places a great deal of weight, particularly troubling. Sucher did respond in the negative to a vaguely worded question about whether he had any "specific recollection" about his meetings with Daniel Hagaman at the beginning of the business relationship (Court File No. 36-3, Sucher Dep., p. 49).[3] But Sucher was not asked specifically whether he

---

[3] Specifically, the portion relied upon heavily by Hagaman is as follows.
COUNSEL: . . . . Do you recall the first work that Virtual Studios did for Hagaman?
SUCHER: No.
COUNSEL: Okay. At the beginning of the relationship, did you have any meetings with Dan Hagaman?
SUCHER: I'm sure that I did.
COUNSEL: Okay. Do you have the specific recollection of meetings?
SUCHER: No, I don't.
COUNSEL: And I guess that maybe it goes without saying, but you don't have any recollection of what was discussed during any of these meetings that may have occurred?
SUCHER: That's correct.

8

recalled *this* meeting. In light of the consistent position Virtual has taken in its response to interrogatories and its complaint that Virtual provided its normal array of purchase options to Hagaman, this answer is insufficient to devoid the record of any issue of disputed fact.

Further, the testimony relied upon by Hagaman is internally inconsistent. For instance, Daniel Hagaman states repeatedly that he would have absolutely required Hagaman own any image that was produced to avoid precisely the issue that has arisen here. He stated "if they're going to do the work, we're going to own the images. And that's the way I always do that. I always have" ((Court File No. 36-1, Daniel Hagaman Dep., p. 26); "[i]f [Sucher] had not agreed, we wouldn't have gone any further" (*id.*); and "We pay for the artwork. We pay to have this done. We want to own it." (*id.* at p. 69). However, when discussing his conversation with Sucher, Daniel Hagaman also indicated he chose the nonexclusive price because "it's less expensive and we didn't need exclusivity" (*id.* at p. 52). Although Daniel stated repeatedly he sought to "own" the images, both Daniel and Michael Hagaman admitted they were aware he chose the "nonexclusive" option, which necessarily indicates a *lack* of outright ownership. Perhaps Daniel Hagaman was confused about

---

| | |
|---|---|
| COUNSEL: | Did you -- do you remember having any meetings with anyone else from Hagaman? |
| SUCHER: | Michael Hagaman. |
| COUNSEL: | Okay. Tell me about that meeting. When did that happen? Do you remember? |
| SUCHER: | No, I really, you know, could not tell you – you know, I talked to Michael a number of occasions, just like I talked to Dan a number of occasions. Specifically what were the conversations about, I couldn't tell you. |

(Court File No. 36-3, Sucher Dep, pp. 50-51). This is not the smoking gun Hagaman argues it is. Sucher simply responded that he did not remember the contents of early meetings with Daniel or Michael Hagaman and was not asked whether he remembered the sales pitch meeting. Perhaps this was present in another portion of the transcript, but the Court's attention has not been directed to it.

9

the distinction between ownership and exclusivity. But this testimony hardly indicates the absence of any disputed fact.

And Hagaman's argument it never signed or affirmed the terms and conditions is insufficient to obtain summary judgment. At worst, even if the terms and conditions are not themselves binding on Hagaman, their presence on the invoices sent to Hagaman and on which Hagaman based its payments to Virtual is evidence in support of Virtual's claim that a one-year license agreement existed from the outset of the relationship. Certainly, the lack of any formal agreement is an issue that weighs in favor of Hagaman. However, construing the record evidence in the light most favorable to Virtual, the Court simply cannot say there is no disputed fact here. Strong argument or not, Hagaman must convince a factfinder. Thus, the Court will not enter judgment against Virtual on this ground.

### B. Statute of Limitations and Laches

Hagaman also argues Virtual's claims are barred by the statute of limitations. The Copyright Act provides "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). "A cause of action accrues when a plaintiff knows of the infringement or is chargeable with such knowledge." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). "Because each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the statutory period." *Id.*

Although Virtual agrees it first became aware of Hagaman's continued infringement in 2006, it correctly argues it is entitled to claim damages for infringement that occurred within three years

10

of filing its claim. Accordingly, Virtual may recover for any infringement occurring since February 21, 2009, because those "infringement claims [] accrued within the statutory period." *Id.* ("It is undisputed that Bridgeport had actual knowledge of its infringement claims with respect to '99 Problems' more than three years before this action was filed and, therefore, claims arising prior to May 4, 1998, are barred by the statute of limitations. For this reason, our focus must be on whether Bridgeport established any acts within the period for which UPIP could be held liable as a direct infringer, a contributory infringer, or as one vicariously liable for the acts of another."); *see also Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 390 (6th Cir. 2007) (quoting *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005) ("[E]ach new infringing act causes a new three year statutory period to begin.")).

Hagaman also raises the issue of laches. Laches is "a negligent and unintentional failure to protect one's rights." *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (citing *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Id.* (quoting *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)). Under most circumstances, given that laches is generally considered an equitable doctrine, "efforts by a plaintiff to obtain the monetary or injunctive relief authorized by statute within the limitations period provided by the Copyright Act will be allowed to proceed." *Id.* at 236. However, in "unusual cases" where "the relief sought will work an *unjust* hardship upon the defendants or upon innocent third parties," the doctrine of laches may be available in a copyright infringement action. *Id.* (emphasis in original).

Hagaman argues Virtual waited too long, as it waited six years from first noticing the alleged

11

infringement before filing suit. However, this action was brought within the statute of limitations and Hagaman has not established an unjust hardship. Hagaman claims it thought it had unlimited right to use the images and had no reason to preserve its records against Virtual. However, because the statute of limitations precludes Virtual from obtaining a judgment for any infringement outside the statutory period, this is a hardship Hagaman would face regardless of whether Virtual discovered the infringement in 2006 or 2009. Moreover, Virtual did inform Michael Hagaman of this issue in 2006.[4] Had Hagaman taken action then, it would not face the hardship it now claims. Accordingly, the Court will not bar Virtual's claims based on the doctrine of laches.

### C. Statutory Damages and Attorney's Fees

Hagaman also argues Plaintiff is barred as a matter of law from seeking statutory damages or attorney's fees. Under the Copyright Act, an infringer is liable for either the copyright owner's actual damages and any additional profits of the infringer, or statutory damages. 17 U.S.C. § 504(a). Under the Copyright Act, 17 U.S.C. § 504(c), a copyright owner may

> elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). However, § 412 of the Copyright Act "states that there will be no award for statutory damages or attorney's fees if, 'any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.'" *Masck v. Sports Illustrated*, No.

---

[4] The Court discusses this email, and Hagaman's arguments with respect to its contents, below.

12

13–10226, 2013 WL 2626853, at *5 (E.D. Mich. June 11, 2013) (quoting 17 U.S.C. § 412(2)).

Hagaman argues, because Virtual claims to have first observed infringement in 2006, the infringement "commenced" prior to registration in 2008, precluding Virtual from obtaining statutory damages or attorney's fees. "[I]nfringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs." *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998). Unlike the statute of limitations for infringement, which accrues anew with each distinct act of infringement regardless of whether it is continuing, "commencement" in the continuing infringement context is the first act of infringement for the purposes of statutory damages and attorney's fees. *See Dorchen/Martin Assocs., Inc. v. Brook of Cheboygan, Inc.*, No. 11–10561, 2013 WL 140790, at *4 (E.D. Mich. Jan. 11, 2013) (concluding Sixth Circuit precedent discussing accrual of the statute of limitations on *infringement* "has no bearing on determining when a series of infringements commence for purposes of § 412").

Virtual concedes that the infringement in this case was "continuing." However, Virtual argues that the only evidence in the record demonstrates Hagaman used many of the images after registration occurred. In other words, Virtual concedes infringement of *some* of the images "commenced" before registration. However, infringement for other images may have "commenced" after registration, providing Virtual the opportunity to obtain statutory damages and attorney's fees as to those images. Hagaman does not respond to this argument, instead incorporating its prior arguments into its reply. Accordingly, the Court will deny Hagaman's motion on the availability of statutory damages. The Court is unable to conclude, based on the record, which photographs were first infringed prior to the date of registration and which were first infringed after that date. The Court is therefore not in a position to determine when infringement "commenced" for which

13

photographs.

### D. Willfulness and Innocence

Hagaman also argues its actions were innocent and not willful and therefore statutory damages should be reduced. "The federal copyright statute provides for the imposition of greater penalties '[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully.'" *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 278 (6th Cir. 2009) (quoting 17 U.S.C. § 504(c)(2)). "[W]here the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully," statutory damages may be increased in the court's discretion to an amount of up to $150,000. 17 U.S.C. § 504(c)(2). In contrast, "where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright," the court may reduce the award to not less than $200. *Id.* Although the statute makes mention of the "court" awarding statutory damages, the Supreme Court has clarified that either the court or a jury can determine the amount of an award of statutory damages. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998).

A question of fact remains regarding Hagaman's willfulness or innocence. The factual disputes discussed above as to what was discussed between the parties and the status of Hagaman's license to use the photographs demonstrate the presence of a question of fact. The terms and conditions language on the invoices also raises issues about Hagaman's knowledge of Virtual's intellectual property rights. Further, Sucher emailed Michael Hagaman in 2006 to inform him of Virtual's intellectual property rights in the room scene images. Hagaman argues Sucher only informed Michael Hagaman that *manipulation* of the room scene was prohibited not *continued use*

14

of it. The email specifically stated "[t]he room scenes that you guys are using in your brochures, rack cards and display are *copyrighted property* of Virtual Studios. Those room scenes can not be manipulated in anyway or it a [sic] direct violation of copyright law. As mentioned before *if you want to use our room scenes for your new products* then please let me know and we'll make the change" (emphasis added). This email at least put Hagaman on notice Virtual still considered the photographs its copyrighted property and that continued use would require Virtual's input. And even if Hagaman's interpretation won the day, this is still in conflict with Daniel Hagaman's view that Hagaman outright owned the images and could do with them as it pleased (*see* Court File No. 36-1, Daniel Hagaman Dep., p. 69) (explaining that ownership was important because "in the past I had paid for work and then maybe want to reprint *and redo things* and the people that do the work say, oh, no") (emphasis added).

Accordingly, a question of fact exists regarding Hagaman's innocence and willfulness in infringing Virtual's copyright. This question should be answered by a jury. *See Hamlin v. Trans-Dapt of Cal., Inc.*, 584 F. Supp. 2d 1050, 1058 (M.D. Tenn. 2008) (concluding questions of fact regarding a defendant's willfulness or innocence required a jury determination).

### E. Preempted State Law Claims

Hagaman argues Virtual's state law claims must be dismissed because they are preempted by the Copyright Act. Section 301 of the Copyright Act reads as follows:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as defined by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). A state law claim can be preempted under Section 301 if the moving party can

15

show the work at issue "come[s] within the scope of the 'subject matter of copyright'" and the right the plaintiff is relying upon under state law to bring its claim is "equivalent to any of the exclusive rights within the scope of federal copyright protection." *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004).

Hagaman contends all of Virtual's state law claims satisfy the requirements for preemption. Virtual does not dispute Hagaman's averments. In fact, Virtual concedes in its response brief that the state law claims must be dismissed. Accordingly, the Court will dismiss Virtual's state law claims in this case.

## IV. CONCLUSION

For the foregoing reasons, **GRANT IN PART** and **DENY IN PART** Hagaman's motion for summary judgment (Court File No. 36). Plaintiff's state law claims will be dismissed. All other claims will proceed to trial.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**